# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXELL, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 17-1446-JFB-SRF |
| | ) |
| BLACKBERRY CORP. and | ) **JURY TRIAL DEMANDED** |
| BLACKBERRY LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*Of Counsel*:

Jamie B. Beaber
Kfir B. Levy
James A. Fussell, III
Tiffany A. Miller
Baldine B. Paul
Saqib J. Siddiqui
Alison T. Gelsleichter
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com

*Counsel for Plaintiff Maxell, Ltd.*

Dated: February 2, 2018

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................... iii

I.     Introduction ........................................................................................................1

II.    Procedural Background .......................................................................................3

III.   Summary Of The Argument ...............................................................................3

IV.    Statement Of The Facts ......................................................................................4

V.     Argument ............................................................................................................6

       A.    The legal framework of patent eligibility. ................................................6

       B.    The eligibility issue is not ripe because important claim construction
             disputes remain unresolved.......................................................................9

       C.    The asserted claims are eligible because they recite a specific physical
             device. ......................................................................................................14

VI.    Conclusion ........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*In re Abele*,
    684 F.2d 902 (C.C.P.A. 1982) .......................................................................7

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..............................................................12, 14

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)....................................................................17

*Alice Corp. Pty. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)........................................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) (Reyna, J., dissenting)............................9

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)......................................................................8

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..............................................................18, 19

*Bilski v. Kappos*,
    561 U.S. 593 (2010).........................................................................7, 12, 16

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) (*en banc*) ...............................................7, 9

*Callwave Commc'ns, LLC v. AT&T Mobility*,
    207 F. Supp. 3d 405 (D. Del. 2016).............................................................17

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
    145 F.3d 1303 (Fed. Cir. 1998)......................................................................6

*Concaten, Inc. v. Ameritrak Fleet Sols., LLC*,
    131 F. Supp. 3d 1166 (D. Colo. 2015).....................................................10, 17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).......................................................................1

*Diamond v. Diehr*,
    450 U.S. 175 (1981).........................................................................................9

*DietGoal Innovations LLC v. Tyson Foods, Inc.*,
    No. 2:12-CV-338, 2013 U.S. Dist. LEXIS 189004 (E.D. Tex. March 2, 2013).....................10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ......................................................................2, 8

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
    128 F. Supp. 3d 103 (D.D.C. 2015) ....................................................................17

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...............................................................2, 15, 16

*Execware, LLC v. BJ's Wholesale Club, Inc.*,
    No. 14-233-LPS, 2015 WL 5734434 (D. Del. Sept. 30, 2015) ................................9

*Four Winds Interactive LLC v. 22 Miles, Inc.*,
    No. 16-CV-00704-MSK-STV, 2017 WL 4334074 (D. Colo. Mar. 28, 2017) .................10, 17

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .........................................................................9

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ..................................................................7, 8, 15

*JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*,
    No. 16-cv-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016) ..........................10

*Khn Sols. Inc. v. Vertisense Inc.*,
    No. 16-CV-00962-HSG, 2016 WL 5725013 (N.D. Cal. Sept. 30, 2016) ..................10

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) .......................................................................................18

*Location Based Servs., LLC v. Niantic, Inc.*,
    No. 17-CV-04413 NC, 2017 WL 6497636 (N.D. Cal. Dec. 19, 2017) ....................17

*MacroSolve, Inc. v. GEICO Ins. Agency, Inc.*,
    No. 6:12cv74, 2013 U.S. Dist. LEXIS 189003 (E.D. Tex. Feb. 5, 2013) ...............10

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    No. CV 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ....................13, 19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...............................................................8, 15, 16

*Move, Inc. v. Real Estate All. Ltd.*,
    221 F. Supp. 3d 1149 (C.D. Cal. 2016) ..............................................................17

*Peschke Map Techs. LLC v. Rouse Properties Inc.*,
    168 F. Supp. 3d 881 (E.D. Va. 2016) .................................................................17

*Phoenix Licensing, LLC, et al. v. Aetna, Inc., et al.*,
No. 2:11-CV-285, 2012 WL 12937525 (E.D. Tex. Sept. 12, 2012).......................10

*Qcue, Inc. v. Digonex Techs., Inc.*,
No. A-12-CA-484-SS, 2013 WL 12121443 (W.D. Tex. Feb. 26, 2013)................10

*State St. Bank & Tr. Co. v. Signature Fin. Grp., Inc*,
149 F.3d 1368 (Fed. Cir. 1998)................................................................7

*StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*,
No. 8:13-CV-2240-T-33MAP, 2015 WL 518852 (M.D. Fla. Feb. 9, 2015) ...........10

*Wetro Lan LLC v. Phoenix Contact USA Inc*.,
No. 2:15-cv-421, 2016 WL 1228746 (E.D. Tex. Mar. 29, 2016) ...........................10

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015).........................................................2, 11, 14, 15

*zIT Consulting GmbH v. BMC Software, Inc.*,
No. 615CV1012ORL37KRS, 2016 WL 231215 (M.D. Fla. Jan. 15, 2016)...............10, 12, 14

**Statutes, Rules and Regulations**

35 U.S.C. § 101 ........................................................................... *passim*

35 U.S.C. § 102 ........................................................................................9

35 U.S.C. § 103 .....................................................................................9, 19

35 U.S.C. § 112 ........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................3

## I. Introduction

Eight years before Apple released its first GPS-enabled iPhone and five years before Google launched its first Maps product, Kishiko Maruyama and her co-inventors were experimenting with ways to deliver navigation services to the tiny screens of the day's nascent mobile phones. At that time, the Internet hosted only a handful of map applications, and those applications were geared to stationary desktop computers, not to mobile phones. The inventors recognized the benefits of delivering such mapping services to mobile phones and of supplementing those services with real-time location information from the phones themselves. But the volume of data necessary to operate existing map applications was prohibitive for the underpowered handsets. And their small, text-based displays were ill-equipped to display full maps or to enable meaningful user interactions. The problem of how to deliver location and direction services to mobile devices was therefore "a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Maruyama and her co-inventors conceived of and patented a device that could provide one solution. *See* U.S. Patent No. 6,580,999. The inventors proposed a mobile device with a "[c]ellular antenna and … an infrared ray sensor" such as a "GSP, PHS, or the like," with which the device could obtain "location information," including "a latitude/longitude or coordinates and an altitude." *Id.* at 5:58-63. They further proposed equipping the device with "a compass, a gyro, and such a sensor as a clinometer," with which the device could obtain direction information, such as "the direction of the tip of the [device] or the orientation of the display screen represented by a direction and an angle of elevation." *Id.* at 5:63-6:2. And they proposed various ways in which the device could use this specific combination of hardware, along with data

compression techniques, to display direction and distance to another mobile device on the phone's limited screen space. *Id.* at 10:45-51, 3:1-37; 5:6-36.

To ensure they patented no more than they invented, the inventors claimed their new mobile device using a means-plus-function format, which covers only "the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112; *see Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349-50 (Fed. Cir. 2015). The inventors were thus careful to patent only the specific combination of hardware they disclosed— one "implementation of a solution to [the] problem" of delivering navigation services to a mobile terminal. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). The inventors did not "attempt[] to patent the abstract idea of a solution to the problem." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Defendants ("Blackberry") have invited the Court to declare, at this early stage of the litigation, that the claims of the '999 Patent are invalid. D.I. 12, 13 ("Mot"). Blackberry does not argue that Maruyama's device already existed or that making it would have been obvious. Instead, it argues that the device is not the type of thing the patent system was ever intended to protect. According to Blackberry, the claims recite nothing beyond the abstract idea of "using a map to display geographic information" (Mot. 1), and they thus "pre-empt[] the millennia-old tradition of navigating using a paper map and pen" (Mot. 5).

Not only is Blackberry incorrect, but its position is unsupportable at this early stage of the litigation. Blackberry's analysis relies on so broad a construction of the claims that even a Boy Scout's "portable orienteering kit" would infringe. Mot. 5-6. But the Court has issued no such construction. Indeed, neither party has yet to even propose a construction or submit briefing on the issue, and the Court has yet to identify and resolve any disputes. For instance, the Court has

not yet determined whether the inventors invoked the means-plus-function provisions of § 112, it has not yet looked to the specification to identify "the corresponding structure, material, or acts described [therein]" (35 U.S.C. § 112, ¶ 6), it has not yet resolved the scope of that structure's equivalents, and it has not yet conducted any fact-finding to discover whether the recited combination of components was indeed, as Blackberry contends, "conventional" at the time of invention. Mot. 15. In the absence of claim construction and of any factual record, Blackberry simply cannot prove by clear and convincing evidence that every claim is ineligible.

As the litigation matures and these subsidiary issues are resolved, it will become clear that the asserted claims recite a specific, patent-eligible combination of hardware and not, as Blackberry now contends, the abstract idea of "using a map." Mot. 1. The Court should therefore deny Blackberry's motion as both procedurally premature and substantively incorrect.

## II.  Procedural Background

On October 13, 2017, Maxell asserted seven patents against Blackberry, including the '999 Patent. D.I. 1. On January 19, 2018, Blackberry responded with a motion to dismiss all claims related to the '999 Patent for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). D.I. 12, 13. Blackberry argues that all claims of the '999 Patent recite only abstract ideas and are therefore ineligible under 35 U.S.C. § 101.

## III.  Summary Of The Argument

Blackberry's motion should be denied because it is both procedurally premature and substantively incorrect.

1. The motion is premature because claim construction and factual disputes impacting the eligibility analysis remain outstanding. *First*, Blackberry's analysis is based on a claim construction that assumes the claims' limitations are purely functional and unbounded by § 112, ¶ 6. Maxell disagrees and asserts that the claims should be interpreted under § 112, ¶ 6. Whether

and how § 112, ¶ 6 applies is a claim construction dispute that will fundamentally impact the eligibility analysis. It is therefore premature to reach the eligibility issue before claim construction. *Second*, Blackberry's motion relies on many factual assertions that the claimed technologies were "conventional" at the time of invention. But in the absence of any factual record, Blackberry cannot support those assertions. Indeed, its attorney argument is at odds with the '999 Patent's specification, which is the only evidence of record and must be viewed in the light most favorable to Maxell at this stage. While these important claim construction and factual disputes remain unresolved, it is simply too early to reach the eligibility issue.

2. If the Court nevertheless reaches the eligibility issue now, it should hold that the asserted claims recite quintessentially eligible subject matter—a specific physical device comprising specific physical components. When addressing eligibility at the pleading stage, a court must construe the claims in the light most favorable to the patentee. Here, doing so requires applying §112, ¶ 6 and holding that the claims recite a physical device comprising the particular subcomponents disclosed in the specification. When so construed, the claims are plainly eligible under step one of *Alice* because they are "directed to" a physical device with specifically-recited components, not to an abstract idea. They are also independently eligible under step two of *Alice* because they recite the non-conventional and non-generic arrangement of components. The physical device claimed in the '999 Patent is therefore patent eligible.

## IV.  Statement Of The Facts

The '999 Patent "relates to a portable terminal provided with the function of walking navigation, which can supply location-related information to the walking user." '999 Patent at 1:14-16; *see also id.* at Abstract, Title. At the time of invention, both online mapping software and mobile computing devices were in their infancy. Indeed, users would commonly receive mapping services by fax machine, which would print paper maps. *Id.* at 1:18-27.

Internet-based map services were emerging, but these were optimized for stationary desktop computers with large monitors. *Id.* at 1:44-2:14. Utilizing such services on the go often required cables and specialized software to interconnect various mobile devices. *Id.* at 2:14-32. And the resulting output was difficult to see and use with the telephone's limited key set. *Id.*

The '999 Patent discloses a portable device with a particular combination of hardware components tailored for delivering mobile mapping services. The device includes a "[c]ellular antenna and … an infrared ray sensor" such as a "GSP, PHS, or the like," with which it can obtain "location information." *Id.* at 5:58-63. The specification discloses that "location information" is "a latitude/longitude or coordinates and an altitude." *Id.* Moreover, the device includes "a compass, a gyro, and such a sensor as a clinometer," with which it can obtain "direction information." *Id.* at 5:63-6:2. The specification discloses that "direction information" is "the direction of the tip of the [device] or the orientation of the display screen represented by a direction and an angle of elevation." *Id.* The '999 Patent thus discloses a portable device with a specific combination of hardware that has a particular set of capabilities.

The patent claims the disclosed combination of hardware using the means-plus-function format prescribed by pre-AIA, § 112, ¶ 6. For example, claim 1 recites:

1.      A portable terminal with the function of walking navigation, comprising:

     a device for getting location information denoting a present place of said portable terminal;

     a device for getting direction information denoting an orientation of said portable terminal; and

     a device for getting the location information of another portable terminal, wherein

> a direction from said present place to the location of said another portable terminal is displayed with the distance information between said locations to supply route guidance information as said walking navigation information.

*Id.* at 10:38-51.

Under the means-plus-function framework, each of the "device[s]" recited in the claim includes only "the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. It is the Court's role to identify that "corresponding structure" and the jury's role to identify their "equivalents." *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998).

## V.      Argument

Blackberry's motion should be denied as both procedurally premature and substantively incorrect. The motion is procedurally premature because the Court has not yet had the opportunity to construe the claims or to make factual findings about what was routine or conventional at the time of invention. And the motion is substantively incorrect because, applying the construction most favorable to Maxell, the asserted claims are not directed to abstract ideas but to specific physical devices that include a specific combination of hardware.

## A.      The legal framework of patent eligibility.

Section 101 of the Patent Act defines the scope of patentable subject matter broadly: "any new and useful process, machine, manufacture, or composition of matter, or any … improvement thereof" may be patented. 35 U.S.C. § 101. One exception to this broad scope of eligibility is that an "abstract idea" may not be patented. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

The Supreme Court has prescribed a two-step framework for determining whether a claim falls within this exception. *Id.* at 2355. The first step is to consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). If they are, the second step is to determine whether the claims nevertheless recite "an inventive concept— *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal punctuation omitted).

Though the courts have never defined the term "abstract idea," they have made clear that the term does not apply to specific physical devices. For many years, the courts have refused altogether to apply the "abstract" label to any claim meaningfully tied to a physical device. *See*, *e.g.*, *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*) (adopting a "machine or transformation" test for eligibility); *State St. Bank & Tr. Co. v. Signature Fin. Grp., Inc*, 149 F.3d 1368 (Fed. Cir. 1998) (adopting a "tangible result" test for eligibility); *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) (adopting an "applied to physical elements" test for eligibility). Indeed, it was not long ago that the Federal Circuit declared *en banc* that claims "tied to a particular machine or apparatus" are *always* patent eligible. *In re Bilski*, 545 F.3d at 954. And though the Supreme Court eventually overruled that holding with respect to method claims, it nevertheless confirmed that "inventions grounded in a physical or other tangible form" are patent eligible. *See Bilski v. Kappos*, 561 U.S. 593, 605 (2010) ("The machine-or-transformation test may well provide a sufficient basis for evaluating … inventions grounded in a physical or other tangible form."). Thus, claims directed to a specific physical device are patent eligible.

What the courts have *not* allowed are "drafting efforts" aimed at unfairly exploiting this principle. The Supreme Court has long held that eligibility cannot "depend simply on the draftsman's art." *Alice*, 134 S. Ct. at 2360. Thus, for example, the Court held in *Alice* that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358. In other words, a drafting trick that "simply instruct[s] the practitioner to implement the abstract idea … on a generic computer" does not confer eligibility. *Id.* at 2359.

The Federal Circuit has operationalized this holding regarding "generic computers" as an instruction to "prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (internal quotation marks omitted). Accordingly, the court of appeals has frequently analyzed the eligibility issue by "look[ing] to whether the claims … focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1314; *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("a claim that merely describes an effect or result dissociated from any method by which it is accomplished is not directed to patent-eligible subject matter") (internal punctuation omitted); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (noting "a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general"); *Internet Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (criticizing a claim because it "contains no restriction on how the result is accomplished").

In performing the eligibility analysis, one must not confuse the inventiveness requirement of § 101 with the separate novelty requirement of § 102 or the non-obviousness requirement of § 103. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 n.8 (Fed. Cir. 2016). "Novelty is the question of whether the claimed invention is new. Inventiveness is the question of whether the claimed matter is invention at all, new or otherwise." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1311 (Fed. Cir. 2016) (Reyna, J., dissenting). "[N]ovelty … is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981). Accordingly, the proper question in the eligibility inquiry is not whether the claimed invention is new or non-obvious, but whether it could be an invention at all rather than only an "abstract idea."

**B.      The eligibility issue is not ripe because important claim construction disputes remain unresolved.**

The Court should decline Blackberry's invitation to decide the patent-eligibility question because the issue is not yet ripe. In particular, Blackberry's motion raises a claim construction dispute that will impact the eligibility analysis considerably—whether and how the claims are to be interpreted under § 112 ¶ 6. Without first resolving that dispute, it is premature to evaluate the eligibility question.

Claim construction "is an important first step in a § 101 analysis." *In re Bilski*, 545 F.3d at 951. Indeed, a court should determine eligibility without claim construction only when "the challenged claims are so clear on their face that formal claim construction is unnecessary." *Execware, LLC v. BJ's Wholesale Club, Inc.*, C.A. No. 14-233-LPS, 2015 WL 5734434, at *3 (D. Del. Sept. 30, 2015). For that reason, district courts around the country have uniformly refused to address eligibility while claim construction disputes impacting that analysis remained

outstanding. *See*, *e.g.*, *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, No. 16-cv-212-GMS, 2016 WL 4639140, at *3 (D. Del. Sept. 6, 2016); *Wetro Lan LLC v. Phoenix Contact USA Inc.*, No. 2:15-cv-421, 2016 WL 1228746 (E.D. Tex. Mar. 29, 2016); *Khn Sols. Inc. v. Vertisense Inc.*, No. 16-cv-00962-HSG, 2016 WL 5725013, at *3 (N.D. Cal. Sept. 30, 2016); *zIT Consulting GmbH v. BMC Software, Inc.*, No. 6:15-cv-1012-ORL-37KRS, 2016 WL 231215, at *5 (M.D. Fla. Jan. 15, 2016); *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-cv -2240-T-33MAP, 2015 WL 518852, at *4 (M.D. Fla. Feb. 9, 2015); *DietGoal Innovations LLC v. Tyson Foods, Inc.*, No. 2:12-CV-338-JRG-RSP, 2013 U.S. Dist. LEXIS 189004 (E.D. Tex. March 2, 2013); *MacroSolve, Inc. v. GEICO Ins. Agency, Inc.*, No. 6:12cv74-MHS-JDL, 2013 U.S. Dist. LEXIS 189003 at *5 (E.D. Tex. Feb. 5, 2013); *Phoenix Licensing, LLC, et al. v. Aetna, Inc., et al.*, No. 2:11-CV-285-JRG, 2012 WL 12937525, at *1 (E.D. Tex. Sept. 12, 2012); *Qcue, Inc. v. Digonex Techs., Inc.*, No. A-12-CA-484-SS, 2013 WL 12121443, at *3 (W.D. Tex. Feb. 26, 2013). This is so even in the cases Blackberry cites, where courts reached the eligibility issue only after receiving claim construction briefing and determining that no outstanding disputes would affect the analysis. *See*, *e.g.*, *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1170-71 (D. Colo. Sept. 23, 2015) (held *Markman* hearing); *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704-MSK-STV, 2017 WL 4334074 n.8 (D. Colo. Mar. 28, 2017) (received claim construction briefing).

But here, Blackberry's motion raises a claim construction dispute with significant implications for the eligibility analysis: whether and how the claims should be interpreted under § 112, ¶ 6. Blackberry assumes that § 112, ¶ 6 does not apply (Mot. 4-5)—indeed it argues that the specification does not limit the claims in any way (*id.* at 5 n.3). Consequently, it analyzes the eligibility issue by looking only to the claims' functional language, and not to the corresponding

structure in the specification. Mot. 4-5. For example, it characterizes the recited "device for getting location information" as any device "able to obtain its own location." *Id.* at 4. Similarly, it characterizes the recited "device for getting direction information" as any device "capable of" performing that function. *Id.* Tellingly, Blackberry refers to these claim limitations as "steps" rather than components or devices. *Id.* at 5.

But Maxell disagrees with Blackberry's assumption that § 112, ¶ 6 does not apply. The claims recite a "portable terminal … comprising" three "device[s] for" performing respective functions. Each of those device limitations may be properly construed under § 112, ¶ 6 because it is "in a format consistent with traditional means-plus-function claim limitations," and simply replaces the word "means" with the nonce term "device." *Williamson*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). The Federal Circuit has held that "[g]eneric terms such as … 'device'… may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke § 112, para 6." *Id.* (internal quotation marks omitted).

If the Court were to construe the claims under § 112, ¶ 6, their scope would differ dramatically from what Blackberry presents. Rather than being limited only by their recited functions, each of the recited "device[s]" would be limited to the particular hardware components disclosed in the specification for performing those functions. For example, the "device for getting location information" could be limited to a "[c]ellular antenna and … an infrared ray sensor" such as a "GSP, PHS, or the like." '999 at 5:58-63. And the "device for getting direction information" could be limited to "a compass, a gyro, and such a sensor as a clinometer." *Id.* at 5:63-6:2. Thus, the scope of the claims would be limited to a physical device

comprising a specific combination of hardware components. Such physical devices are routinely eligible because they are "grounded in a physical or other tangible form." *Bilski*, 561 U.S. at 605.

To finding the claims ineligible at this early stage, the Court would have to rule that the claims are necessarily ineligible under whatever reasonable construction most favors Maxell's position. *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013). But the Court is yet to receive any briefing or conduct any hearing to investigate the scope of reasonable constructions, including whether § 112, ¶ 6 will apply and how. Blackberry has not proposed any construction under that statute, let alone proved that the claims are ineligible when the statute is applied. Faced with a similar situation, another court has described the guesswork of ruling on eligibility at this early stage as "a colossal waste of judicial recourses" and declined to do so until "the parties exchanged their respective claim construction proposals." *zIT Consulting*, , 2016 WL 231215, at *5.

Far from proving that no claim construction is necessary, Blackberry's briefing portends additional claim construction and factual disputes that the Court will need to resolve before reaching the eligibility question. For example, Blackberry argues that the specification's use of broadening language (*e.g.*, "or the like") when describing certain components means that all of the claimed components are "generic"—*i.e.*, encompass all hardware capable of performing the function. Mot. 13. But that argument simply raises issues for claim construction. Determining whether the recited components are indeed generic requires (1) identifying the function of the recited components, (2) identifying the corresponding structure in the specification, and (3) weighing evidence to make the factual finding of whether a person of ordinary skill in the art at the time of invention would have understood that corresponding disclosure as referring to generic components. That is the role of claim construction and it is informed by fact discovery.

The Court should not decide the issue based only on Blackberry's unsupported attorney argument.

The same is true for Blackberry's contentions that the claims require only "off-the-shelf," "conventional," and "standard computing components." *Id.* at 13. Blackberry cannot make that showing without claim construction or in the absence of a factual record. *First*, because Blackberry has not attempted to construe the claimed components under § 112, ¶ 6, it cannot argue that those components are "generic" or "conventional." Construing the claims properly is a logical prerequisite to any such argument. *Second*, with no factual record, Blackberry cannot support its assertion that the recited components were conventional at the time of invention. As Chief Judge Stark recently explained when approaching a similarly-timed eligibility motion, "[t]he Court is not free to accept Defendant's … attorney argument that [a claim] is directed to a 'conventional' way" of achieving an end, when there is no evidence in the record to support that conclusion. *MAZ Encryption Techs. LLC v. Blackberry Corp.*, C.A. No. 13-304-LPS, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016). In the absence of a factual record, "the Court must take the specification's statements about the purported invention to be true." *Id.*

Here, the specification directly contradicts Blackberry's suggestion that the claimed invention was conventional. The specification discusses the shortcomings of "conventional map information services" ('999 Patent at 1:44) and of existing mobile devices, such as "the conventional PDA terminal with GPS" (*id.* at 2:33-34; *see generally id.* at 1:44-2:46). And it expressly distinguishes the claimed invention from these conventional technologies. *Id.* at 2:47-67. Blackberry's suggestion that the recited device was "generic" or "conventional" is therefore unsupportable at this stage.

At bottom, addressing the eligibility issue now is premature because significant claim construction disputes impacting the eligibility analysis remain outstanding. The parties are yet to submit any claim construction positions and the Court has yet to make relevant factual findings or to construe the claims. The Court should therefore decline Blackberry's ill-timed invitation to rule on eligibility so early in this litigation.

**C.    The asserted claims are eligible because they recite a specific physical device.**

If the Court nevertheless chooses to reach the eligibility issue now, it should hold that the asserted claims recite eligible subject matter—a specific physical device comprising specific physical components.

When addressing eligibility at the pleading stage, a court must construe the claims in the light most favorable to the patentee. *Accenture*, 728 F.3d at 1346. Consequently, "[c]ourts that have resolved § 101 issues prior to claim construction [have] often do[ne] so by adopting the patentee's proposed construction for purposes of analysis." *zIT Consulting*, 2016 WL 231215, at *5.

In this case, the Court should deny Blackberry's motion to dismiss because: (1) construing the claims in a manner most favorable to Maxell requires applying § 112, ¶ 6, (2) the asserted claims, construed under that statute, are eligible under step one of *Alice* because they are "directed to" a specific physical device comprised a specific combination of physical components, and (3) the claims are further eligible under step two of *Alice* because they require more than generic computer implementation. Nothing in Blackberry's briefing contradicts these conclusions.

1. The proper claim construction requires application of § 112, ¶ 6. Although claim elements subject to § 112, ¶ 6 are frequently recited as "means for" performing a given function, the word "means" is not legally required. *Williamson*, 792 F.3d at 1359. Instead, § 112, ¶ 6

applies where a claim is "in a format consistent with traditional means-plus-function claim limitations," but it "replaces the term 'means' with" a nonce term, such as "device" or "module." *Id.* at 1350.

Here, each of the independent claims recites a "portable terminal … comprising" three "device[s] for" performing respective functions: "a device for getting location information," "a device for getting direction information," and "a device for getting the location information of another portable terminal." *See* '999 Patent at 10:37-12:14. Each of these three limitations is "in a format consistent with traditional means-plus-function claim limitations," but simply replaces the term "means" with the term "device." *Williamson*, 792 F.3d at 1350. The Federal Circuit has held that the term "device" is a nonce term that can be used to invoke § 112, ¶ 6. *Id.* Accordingly, each of the device limitations "recites function without reciting sufficient structure for performing that function," and it thus invokes § 112, ¶ 6. *Id.* at 1349.

2. When properly construed according to § 112, ¶ 6, the claims are eligible under step one of *Alice* because they are "directed to" a physical device with specifically-recited components, not to an abstract idea.

"Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). The inquiry is not "whether the claims *involve* a patent-ineligible concept because essentially every routinely patent-eligible claim involving physical products and actions *involves*" an abstract concept. *Enfish*, 822 F.3d at 1335. Instead, the inquiry is whether the claims are actually "directed to" such a concept and "simply use a computer as a tool to automate conventional activity." *McRO*, 837 F.3d at 1314.

Here, the claims certainly *involve* "the abstract idea of displaying geographic directions on a handheld device" (Mot. 4), but their "character as a whole" is not "directed to" that concept. Properly construed under § 112, ¶ 6, the claims are directed to a specific hardware device comprising the recited components, as limited by the specification. As discussed above, claim construction may limit the recited "device for getting location information" to a "[c]ellular antenna and … an infrared ray sensor" such as a "GSP, PHS, or the like" ('999 at 5:58-63) or the "device for getting direction information" to "a compass, a gyro, and such a sensor as a clinometer" (*id.* at 5:63-6:2). These limitations direct the claim to a particular physical device: a "portable terminal … comprising" certain physical components disclosed in the specification.

Because the asserted claims are directed to a particular device, they are "routinely patent-eligible claim[s] involving physical products." *Enfish*, 822 F.3d at 1335. They are necessarily "grounded in a physical or other tangible form." *Bilski*, 561 U.S. at 605. They are not a mere drafting trick that "simply instruct[s] the practitioner to implement the abstract idea … on a generic computer." *Alice*, 134 S. Ct. at 2351. And they do not "abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'" *McRO*, 837 F.3d at 1314. Just the opposite is true: they cover only a particular device for accomplishing the recited results.

Nothing in Blackberry's step one analysis suggests that the claims are directed to abstract ideas when construed under § 112, ¶ 6. For example, its lead argument that "[t]he '999 patent arguably preempts the millennia-old tradition of navigation using a paper map and pen" is facially wrong. Mot. 5. The three recited devices are expressly limited to the specific hardware disclosed in the specification, and a Boy Scout map is not among that disclosed hardware. If Blackberry wishes to argue that a Boy Scout map is within the scope of the claims, it may do so at claim construction. But that factual dispute is unreachable at the pleading stage.

Blackberry's district court analogies are also inapt when § 112, ¶ 6 is applied because none of those cases concerned claims directed to a particular physical device. Mot. 6-9. In fact, each of those cases held claims ineligible exactly because they did not "describe a new device or improvement in any specific device."[1] For example, Blackberry cites extensively to *Callwave Commc'ns, LLC v. AT&T Mobility*, 207 F. Supp. 3d 405 (D. Del. Sept. 15, 2016). Mot. 6-8. But that case found a method claim ineligible specifically because it was not limited to any particular hardware. *Callwave*, 207 F.Supp. at 412 (holding that, while the claim "arguably requires one or two concrete, tangible components … [those] components merely provide a generic environment in which to carry out the abstract idea"). The same is true for the sole Federal Circuit case Blackberry cites in its affirmative case: *Affinity Labs* held the claims there ineligible exactly because they did "not disclose any particular mechanism for" performing the claimed functions. *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). That is, "[t]he specification describe[d] the function … but not a specific means for performing that function." *Id.*

None of these cases are relevant here, where the claims are plainly directed to "a particular mechanism" for performing the recited functions. Because the asserted claims, when

---

[1] *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1173 (D. Colo. Sept. 23, 2015) (the claim "does not describe a new device or improvement in any specific device"); *see also Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-cv-00704-MSK-STV, 2017 WL 4334074, at *9 (D. Colo. Mar. 28, 2017) (same); *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-CV-04413 NC, 2017 WL 6497636, at *10 (N.D. Cal. Dec. 19, 2017) ("the claim language is so vague as to include or exclude anything"); *Peschke Map Techs. LLC v. Rouse Properties Inc.*, 168 F. Supp. 3d 881, 887 (E.D. Va. 2016) ("The only difference [between the claims and use of a paper map] is that the [claims] occurs on a computer."); *Move, Inc. v. Real Estate All. Ltd.*, 221 F. Supp. 3d 1149, 1162 (C.D. Cal. 2016) (the patent is ineligible because it "relies on generic computing capabilities to render the map"); *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 113 (D.D.C. 2015) ("The patent claims include hardware limitations," specifically "computer" and "computer-readable medium," but those terms "hardly provides any real limitation.").

properly construed, are "directed to" a physical, patent-eligible device and not to an abstract idea, the claims are eligible under step one of the *Alice* inquiry.

3. The asserted claims are also eligible under step two of the *Alice* inquiry because they recite an inventive concept—the particular combination of components comprising the claimed mobile terminal.

An inventive concept may be found "in one or more of the individual claim limitations *or in the ordered combination of the limitations*." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (emphasis added). As the Supreme Court has observed, "inventions in most, if not all, instances … will be combinations of what, in some sense, is already known." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007). For that reason, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Thus, a claim may be eligible under step two if it recites either non-conventional pieces or "the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350.

As noted above, the properly construed claims recite an inventive mobile terminal comprising a specific combination of hardware elements. Whether any individual element was "conventional" (and therefore not inventive) is a factual question that cannot be resolved in Blackberry's favor at this stage. Indeed, without claim construction, Blackberry cannot even identify what elements it is accusing of being "conventional."

Moreover, even if all the recited components were individually conventional, their "non-conventional and non-generic arrangement" still provides an inventive concept. *Id.* at 1350. The '999 Patent makes clear that the invention's underlying goal—*i.e.*, navigation using a mobile

device—was a known concept. *See supra* § IV. But it also describes how the particular arrangement of claimed elements is a technical improvement over prior art devices that implement that concept. *Id.* In the absence of a factual record, "the Court must take the specification's statements about the purported invention to be true." *MAZ Encryption Techs.*, 2016 WL 5661981, at *5. Thus, the claimed combination of elements supplies a paradigmatic inventive concept: a "particular arrangement of elements [that] is a technical improvement over prior art ways of" accomplishing the same goal. *Bascom*, 827 F.3d at 1350.

Blackberry's step two analysis consists entirely of unsupported attorney argument that each recited component was individually "conventional." Mot. 12-15. But, as explained above, that argument is neither supported by record evidence nor legally sufficient to establish ineligibility. Rather than an eligibility analysis, what Blackberry provides is "an obviousness analysis under 35 U.S.C. § 103, except lacking an explanation of a reason to combine the limitations as claimed." *Bascom*, 827 F.3d at 1350. That is insufficient.

In sum, the asserted claims are eligible because they recite a particular, inventive combination of physical hardware elements. If Blackberry believes that the claimed combination was not new or that making it would have been obvious, it is free to build a factual record supporting those contentions and to attempt to prove them at trial. In the meantime, its motion to dismiss for lack of eligibility should be denied.

## VI. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Blackberry's motion to dismiss.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

Of Counsel:

Jamie B. Beaber
Kfir B. Levy
James A. Fussell, III
Tiffany A. Miller
Baldine B. Paul
Saqib J. Siddiqui
Alison T. Gelsleichter
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
jbeaber@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
tmiller@mayerbrown.com
bpaul@mayerbrown.com
ssiddiqui@mayerbrown.com
agelsleichter@mayerbrown.com

Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606
(312) 782-0600
asbonner@mayerbrown.com


Dated:  February 2, 2018

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com

*Counsel for Plaintiff Maxell, Ltd.*

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on February 2, 2018, I caused the

foregoing *Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim*

to be served via electronic mail upon the following counsel of record:

Chad S.C. Stover
BARNES & THORNBURG LLP
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801
chad.stover@btlaw.com

*Counsel for Defendants BlackBerry
Corporation and Blackberry Ltd.*

Jason W. Cook
Shaun W. Hassett
McGUIRE WOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
jcook@mcguirewoods.com
shassett@mcguirewoods.com

Brian C. Riopelle
McGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
briopelle@mcguirewoods.com

Meghan M. Rachford
McGUIRE WOODS LLP
Promenade
1230 Peachtree Street, N.E.
Suite 2100
Atlanta, Georgia 30309-3534
mrachford@mcguirewoods.com

*Counsel for Defendants BlackBerry
Corporation and Blackberry Ltd.*

 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)